# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

Kathleen Meehan,                                                    Civil No. 12-17 (DWF/SER)

          Plaintiff,

v.                                                                                   **MEMORANDUM**
                                                                                **OPINION AND ORDER**
Officer Scott Thompson,
in his individual and official
capacities as a police officer
for the City of Edina,

          Defendant.

_____

Andrew M. Irlbeck, Esq., and Paul Applebaum, Esq., counsel for Plaintiff.

Daniel R. Olson, Esq., Jonathan P. Norrie, Esq., and Mark P. Hodkinson, Esq., Bassford Remele, PA, counsel for Defendant.

_____

## INTRODUCTION

This matter is before the Court on Defendant's Motion for Summary Judgment (Doc. No. 12). For the reasons set forth below, the Court denies Defendant's motion.

## BACKGROUND

On April 28, 2011, Edina Police Officers were dispatched to the scene of an accident, approximately 10 blocks from Plaintiff's home. (Doc. No. 16, Thompson Decl. ¶ 3; Doc. No. 22, Irlbeck Aff. ¶ 3, Ex. 2 ("Plaintiff Dep.") at 45.) At about 10:43 p.m., Officer Scott Thompson ("Defendant") arrived at the scene. (Thompson Decl. ¶ 3.)

Plaintiff also went to the scene of the accident as a passenger in a car driven by her friend, "Kitty," as Kitty's daughter was the individual involved in the accident. (Plaintiff Dep. at 39-42, 45.)

When they arrived at the scene of the accident, Plaintiff and Kitty exited their vehicle and approached Kitty's daughter, but were ordered back into Kitty's car by law enforcement. (*Id.* at 47-48.) After performing field sobriety tests, Kitty's daughter took a preliminary breath test ("PBT") which indicated a blood alcohol concentration ("BAC") of .11; Kitty's daughter was arrested for driving while intoxicated. (*Id.* at 48-49; Thompson Decl. ¶ 6.)

Ultimately, Kitty, too, performed field sobriety tests, took a PBT (which indicated a BAC of .18), and was also arrested for driving while intoxicated. (Thompson Decl. ¶ 7.)

Having not brought her own phone, Plaintiff called her husband on Kitty's phone. (*Id.* at 51.) While she was on the phone with her husband, Defendant approached Plaintiff, who was still seated in the passenger seat of Kitty's car. (*Id.* at 52; Doc. No. 17, Kuske Decl. ¶ 6, Ex. A ("DVD") at 22:56:30.) The facts surrounding the interaction that ensued between Plaintiff and Defendant are in dispute.

Plaintiff claims that Defendant asked Plaintiff if she had been drinking, to which Plaintiff replied "yes." (Plaintiff Dep. at 52.) Plaintiff then asked if she could walk to Lund's, which Defendant would not permit. (Thompson Decl. ¶ 9; DVD at 22:57:15.) As heard on the video, Defendant then told Plaintiff: "I'm not going to repeat myself.

2

You need a sober adult to come take care of you or I'm taking you to detox. That's the end of it." (DVD at 22:57:20; *see* Thompson Decl. ¶¶ 8-9.) Plaintiff relayed this message to her husband, along with her location, via Kitty's cell phone. (DVD at 22:57:30.)

At Defendant's request, Plaintiff then exited the vehicle.[1] (*Id.* at 22:58:18.) The interaction between Plaintiff and Defendant after she exited the vehicle was not captured on camera. Plaintiff claims that Defendant told Plaintiff that he was "going to put [her] through a field sobriety test." (Plaintiff Dep. at 56-57.) Plaintiff then allegedly stated: "I don't understand why I have to take one, I'm not driving." (*Id.*) Plaintiff claims that Defendant replied by ordering Plaintiff to "[g]et up against the [squad] car." (*Id.* at 57.) When Plaintiff "asked him why," Defendant allegedly responded: "Get up against the car or I'll put you against the car." (*Id.* at 57.) Plaintiff testified that: "I went up against the car, his ugly black boot came between my legs, shoved them apart, I was frisked, and then he put me in the back of the squad." (*Id.* at 58.) Defendant denies ever having frisked Plaintiff. (Thompson Decl. ¶ 12.) Plaintiff claims that Defendant had not asked her to submit to a PBT. (Plaintiff Dep. at 57.)

Once she was in the squad car, Plaintiff called her husband again. (*Id.* at 60.) Shortly thereafter, Defendant got in the car and repeated to Plaintiff that he was giving her the opportunity to find a safe and sober driver, which Plaintiff claims to have again

---

[1] Defendant claims that Plaintiff was not cooperative and refused to exit the vehicle. (Thompson Decl. ¶ 9.) Defendant further testified that he asked Plaintiff multiple times to find someone to pick her up. (Irlbeck Aff. ¶ 6, Ex. 6, Thompson Dep. at 27.)

repeated to her husband over the phone. (*Id.*) Mr. Meehan did not feel comfortable to drive himself because he had been drinking as well. (Irlbeck Aff. ¶ 5, Ex. 4, T. Meehan Dep. at 32.)

While waiting for Mr. Meehan to arrange for a sober ride, Defendant allegedly stated: "I've lost my patience with you. I'm taking you to detox," which was nearly 10 miles away. (Plaintiff Dep. at 61-62.) According to Plaintiff, Defendant waited less than four minutes for Plaintiff's sober ride to arrive.[2] (*See* DVD at 23:05:50-23:09:18.) Defendant testified that he waited six or seven minutes from the time he put Plaintiff in the squad car to the time he drove away, about half of which she spent on the phone with her husband. (Irlbeck Aff. ¶ 6, Ex. 6, Thompson Dep. at 41.)

Defendant testified that at the scene, he looked up Plaintiff's address information and learned that she lived "approximately a mile to a mile and a quarter," from the scene, and acknowledged that it was only "a couple minutes away." (*Id.* at 31-32.) Defendant further represented that he did not suspect Plaintiff of any criminal activity at the time of the incident. (*Id.* at 33-34.) Defendant claims that Plaintiff was a danger to herself and that he took her to detox because:

> Well, first I noticed the signs of alcohol influence. So I could smell her breath. I could listen to her speech that was slurred in my estimation. I questioned her judgment in terms of getting into the car in the first place with a driver who turned out to be intoxicated at a .18. I questioned her

---

[2] Approximately four and a half minutes after Defendant drove away, Mr. Meehan approached one of the officers on the scene and inquired as to Plaintiff's whereabouts. (DVD at 23:13:54.) Mr. Meehan eventually learned from Kitty that his wife had been taken to detox. (*Id.* at 23:14:00-23:14:30.)

> judgment into getting into a car to drive up to a police scene with a person who's intoxicated while she was also. And she wasn't cooperating with me in terms of, excuse me, getting – getting a ride. So when I put all those circumstances together, I didn't feel like she was caring for herself. That's how I felt that night.

(*Id.* at 28-29.)

Defendant claims that, "[b]ased on the totality of the circumstances, particularly [Plaintiff's] apparent intoxication, lack of cooperation and inability to arrange for a ride, and the level of the driver's intoxication, I felt that she was a danger to herself or others and, without a sober, responsible person there to assume care of her, decided my only other alternative was to take her to detox." (Thompson Decl. ¶ 13.) At detox, Plaintiff was administered a breathalyzer, at which time her BAC result was .082. (Irlbeck Aff. ¶ 6, Ex. 5 at I.)

Plaintiff's Complaint in this matter asserts the following causes of action: (1) Violation of 42 U.S.C. § 1983; (2) Battery; and (3) False Imprisonment. (Doc. No. 1, Compl. ¶¶ 21-28.) Defendant now moves for summary judgment with respect to all of Plaintiff's claims. (Doc. No. 12.)

## DISCUSSION

### I.     Summary Judgment Standard

Summary judgment is proper if there are no disputed issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The Court must view the evidence and the inferences that may be reasonably drawn from the evidence in the light most favorable to the nonmoving party. *Enter. Bank v. Magna Bank*

*of Mo.*, 92 F.3d 743, 747 (8th Cir. 1996). However, as the Supreme Court has stated, "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy, and inexpensive determination of every action.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986) (quoting Fed. R. Civ. P. 1).

The moving party bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Enter. Bank*, 92 F.3d at 747. The nonmoving party must demonstrate the existence of specific facts in the record that create a genuine issue for trial. *Krenik v. County of Le Sueur*, 47 F.3d 953, 957 (8th Cir. 1995). A party opposing a properly supported motion for summary judgment "may not rest upon the mere allegations or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986).

## II. Motion for Summary Judgment

### A. § 1983 Claim

Plaintiff asserts her § 1983 claim against Defendant, presumably in his individual capacity.[3] Specifically, Plaintiff claims that:

---

[3] It is well-established that a governmental entity cannot be held liable under § 1983 on a *respondeat superior* theory. *See Monell v. Dep't of Social Servs.*, 436 U.S. 658, 691 (1978) (concluding that "Congress did not intend municipalities to be held liable unless action pursuant to official municipal policy of some nature caused a constitutional tort"). To the extent Plaintiff may assert her § 1983 claim against Defendant in his official capacity, or against the City of Edina, Count I is properly dismissed.

6

> By illegally detaining Plaintiff without probable cause or a reasonable suspicion of criminal activity, frisking her without a reasonable suspicion that she was armed, refusing to take her home or let her walk home, and by having her committed to the Chicago Avenue detox center, Defendant acted with specific intent to deprive Plaintiff of her right to be free from excessive and unjustified force, illegal search and seizure, and false arrest.

(Compl. ¶ 21.)

Defendant asserts that he is entitled to qualified immunity on the § 1983 claim. The doctrine of qualified immunity protects state actors from civil liability when their "conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982). The defense provides "ample room for mistaken judgments" as it protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs,* 475 U.S. 335, 341, 343 (1986). To overcome the defense of qualified immunity, a plaintiff must show that: (1) the facts, viewed in the light most favorable to the plaintiff, demonstrate the deprivation of a constitutional or statutory right; and (2) the right was clearly established at the time of the deprivation. *Parrish v. Ball,* 594 F.3d 993, 1001 (8th Cir. 2010) (citation omitted). The Court has discretion to decide which qualified immunity prong to consider first. *Pearson v. Callahan,* 555 U.S. 223, 236 (2009).

Plaintiff first claims that her detention and transport to detox were unlawful under the Fourth Amendment. The Fourth Amendment prohibits unreasonable seizures. *Graham v. Connor,* 490 U.S. 386, 394–95 (1989). A Fourth Amendment seizure occurs when an officer, "by means of physical force or show of authority, terminates or restrains [an individual's] freedom of movement, *through means intentionally applied.*"

7

*v. Cal.,* 551 U.S. 249, 254 (2007) (internal quotations and citations omitted) (emphasis in original); *see also Gardner v. Bd. of Police Comm'rs,* 641 F.3d 947, 951 (8th Cir. 2011). A seizure occurs if "in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." *United States v. Mendenhall,* 446 U.S. 544, 554 (1980); *see also California v. Hodari,* 499 U.S. 621, 628 (1991) (noting that the test in *Mendenhall* has been adopted by the Supreme Court in later cases).

To the extent Plaintiff contends that she was unlawfully detained and transported to detox, the Court concludes that Defendant is not entitled to qualified immunity notwithstanding the discretion accorded him by Minnesota statute.

Minnesota Statute Section 253B.05 states, in relevant part:

> A peace or health officer or a person working under such officer's supervision, may take a person who is believed to be chemically dependent or is intoxicated in public into custody and transport the person to a treatment facility. If the person is intoxicated in public or is believed to be chemically dependent and is not in danger of causing self-harm or harm to any person or property, the peace or health officer may transport the person home . . . .

Minn. Stat. § 253B.05, subd. 2.

There is no dispute that Plaintiff was not free to leave the scene and that her constructive arrest and transport to detox constituted a seizure. Pursuant to the statute, if Plaintiff was intoxicated in public, Defendant had the discretion to take her into custody and transport her to detox. Construing the record in the light most favorable to Plaintiff, however, there is a genuine issue of material fact as to whether a reasonable officer in

Defendant's position would have believed that Plaintiff presented a threat to herself or others.[4]  *Contra Winters v. Adams*, 254 F.3d 758, 764 (8th Cir. 2001) (finding seizure reasonable for community caretaking purposes where a "possibly intoxicated individual" behind the wheel of a parked car may have driven the vehicle, thereby "potentially harming himself and other citizens"); *United States v. King*, 990 F.2d 1552, 1560 (10th Cir. 1993) ("In the course of exercising this non-investigatory [community caretaking] function, a police officer may have occasion to seize a person . . . in order to ensure the safety of the public and/or the individual, regardless of any suspected criminal activity.").

A reasonable jury could find that Defendant's decision to transport Plaintiff to detox, after waiting only a few minutes for her ride to arrive, was objectively unreasonable under the circumstances.  Viewing the facts in Plaintiff's favor, a fact-finder could also reasonably conclude that Plaintiff was not in danger of causing self-harm or harm to others, and that the decision to take her to detox more than 10 miles away, as opposed to driving her home a few blocks away, was objectively unreasonable.  Importantly, public drunkenness is not a crime in Minnesota, as specifically set forth by statute.  Minn. Stat. § 340A.902 ("No person may be charged with or convicted of the offense of drunkenness or public drunkenness.").  Questions of fact exist as to whether a reasonable officer in Defendant's position would have believed that transporting Plaintiff to detox constituted a violation of her constitutional right to be free from unreasonable

---

[4]     Plaintiff contends that she was cooperative with Defendant, and that she displayed no indicia of intoxication; Defendant, however, claims that Plaintiff was uncooperative
(Footnote Continued on Next Page)

detention, a right which was clearly established at the time of the incident.  As such, Defendant is not entitled to qualified immunity in this respect.

Plaintiff further claims that Defendant had no reasonable, articulable suspicion of criminal activity to frisk Plaintiff; she thus claims that she was subjected to excessive force by Defendant.  Where there has been a seizure, the Court evaluates whether an officer's actions constitute excessive force under an objective-reasonableness test. *Graham,* 460 U.S. at 397.  *Id.* at 397.  In determining whether the use of force is "reasonable" under the Fourth Amendment, a court must balance "the nature and quality of the intrusion on the individual's Fourth Amendment interests" against the government's interests at stake.  *Id.* at 396 (citation omitted).  The reasonableness of the use of force must be judged from the "perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight."  *See id.*  The proper application of the Fourth Amendment "requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight."  *Id.*  The question is whether the "totality of the circumstances" justify a particular seizure.  *Id.* (citing *Tennessee v. Garner,* 471 U.S. 1, 8–9 (1985)).

---

(Footnote Continued From Previous Page)
and discernibly intoxicated.

The Court's decision on the excessive force claim turns on the question of whether, taking the facts in the light most favorable to Plaintiff, Plaintiff was subjected to excessive force so as to violate a constitutional right and, if so, whether that right was clearly established at the time. Defendant argues that he did not deprive Plaintiff of a clearly established constitutional right at the time of the incident because the frisk caused not even a *de minimis* injury. In support, Defendant argues that prior to *Chambers v. Pennycook,* 641 F.3d 898 (8th Cir. 2011), a section 1983 plaintiff alleging excessive force had to demonstrate more than *de minimis* injury to defeat qualified immunity.[5] Here, Plaintiff claims to have suffered no physical harm. The rule however, "should focus instead on whether *the force applied* is reasonable from the perspective of a reasonable officer on the scene at the time the force is used." *Id.* at 906. By his own admission, Defendant did not suspect Plaintiff of any crime at all. Nor does it appear that Defendant thought Plaintiff was armed or otherwise feared for his safety in any way. *Contra Winters*, 254 F.3d at 765 (finding officers' use of force objectively reasonable where appellee was behaving erratically and violently). As such, a jury could find that use of any force was objectively unreasonable under the circumstances and thus deprived Plaintiff of a clearly established constitutional right. *See United States v. Carrasco*, 236 F. Supp. 2d 1283, 1291-92 (D. N.M. 2002) (finding pat-down search of a passenger in a

---

[5] Defendant argues that prior to *Chambers*, it was not clearly established "whether an excessive force claim requires some minimum level of injury," thus entitling Defendant to qualified immunity. 641 F.3d at 904, 908.

vehicle constitutionally impermissible under *Terry* and its progeny despite argument that officers were acting in a community caretaker function).

Genuine issues of material fact exist as to whether Defendant's actions—in detaining, frisking and transporting Plaintiff to detox—were objectively reasonable under the circumstances. Taking the facts in the light most favorable to Plaintiff, a reasonable juror could conclude that Defendant's actions were objectively unreasonable under the circumstances, and therefore, that he deprived Plaintiff of a constitutional right by detaining Plaintiff and utilizing excessive force. In addition, the Court concludes that these rights were clearly established at the time of the deprivation. Thus, Defendant is not entitled to qualified immunity, and summary judgment on Plaintiff's § 1983 claim is not warranted.

### B. Battery Claim

Plaintiff also alleges a battery claim against Defendant, as well as the City of Edina pursuant to the doctrines of *respondeat superior* and agency. Battery is "an intentional, unpermitted offensive contact with another." *Johnson v. Morris,* 453 N.W.2d 31, 40 (Minn. 1990).

Defendant argues that Plaintiff's battery claim is barred by the doctrine of official immunity. Under Minnesota law, public officials are automatically entitled to official immunity from state law claims when their duties require the exercise of discretion, so long as the officer is not guilty of a willful or malicious wrong. *See id.* at 41–42. Police officers are generally classified as discretionary officers. *Id.* at 42. Here, there is no

question that Defendant's actions required the exercise of discretion. *See, e.g., Pletan v. Gaines,* 494 N.W.2d 38, 41 (Minn. 1992). Accordingly, to defeat official immunity, Plaintiff must establish malice or willfulness. *See, e.g., Mumm v. Mornson,* 708 N.W.2d 475, 490 (Minn. 2006) ("Official immunity prevents a public official charged by law with duties which call for the exercise of his judgment or discretion from being held personally liable for damages, unless the official has committed a willful or malicious act.") (internal quotations omitted). Malice requires an officer's "intentional doing of a wrongful act without legal justification or excuse." *Rico v. State,* 472 N.W.2d 100, 107 (Minn. 1991).

Here, as explained above with respect to Plaintiff's excessive force claim, viewing the evidence in the light most favorable to Plaintiff, a reasonable juror could find that Defendant did in fact frisk Plaintiff, and that Defendant knew or should have known that his actions in frisking Plaintiff—whom he, by his own admission, did not suspect of criminal activity—were without legal justification. Accordingly, the Court concludes that Defendant is not entitled to official immunity. Thus, the motion for summary judgment with respect to Plaintiff's battery claim is properly denied.

### C. False Imprisonment Claim

Plaintiff also asserts a false imprisonment claim against Defendant and the City of Edina on the same theories articulated above. The common law regarding false imprisonment states that an individual may not, without legal justification, be confined against her or his will. *Gleason v. Metro. Council Transit Operations,* 563 N.W.2d 309,

319 (Minn. Ct. App. 1997) (citing *Kleidon v. Glascock,* 10 N.W.2d 394, 397 (1943) (false imprisonment is any imprisonment that is not legally justifiable)).

Defendant again asserts the defense of official immunity on this claim. Because Plaintiff has raised a viable argument that Defendant's actions in taking her to detox were malicious or willful, and because a reasonable juror could find that Plaintiff's seizure was objectively unreasonableness, fact issues remain with respect to Plaintiff's claim for false imprisonment. Accordingly, summary judgment on the false imprisonment claim is denied.

## CONCLUSION

Considering all of the facts as they are presented in the record, including the video of the incident, and taking them in the light most favorable to Plaintiff, the Court is persuaded that there are genuine issues of material fact as to whether Defendant's conduct violated Plaintiff's Fourth Amendment right to be free from excessive force and unreasonable seizure. A reasonable juror could conclude that the detention and seizure of Plaintiff occurred without legal justification and that Defendant's frisk of Plaintiff and use of force was excessive under the circumstances. If a jury were to believe Plaintiff's version of the facts, the jury could reasonably conclude that Plaintiff's detention and the force used against her were unreasonable and were therefore unlawful.

For the reasons that the Court denies summary judgment on Plaintiff's claims under § 1983, the Court similarly concludes that summary judgment is inappropriate on Plaintiff's false imprisonment and battery claims. The Court notes, however, that success

here does not necessarily mean success at trial and encourages the parties to engage in full and frank settlement discussions.

## ORDER

Based upon the foregoing, and the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that Defendant's Motion for Summary Judgment (Doc. No. [12]) is **DENIED**.

Dated:  July 2, 2013                    s/Donovan W. Frank
                                        DONOVAN W. FRANK
                                        United States District Judge